**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
*Miami Division*
www.flsb.uscourts.gov

IN RE:

LEXI DEVELOPMENT COMPANY, INC.,

    Debtor.
_____/

CASE NO. 10-27573-AJC
CHAPTER 11

LEXI DEVELOPMENT COMPANY, INC.
a Florida corporation,

    Plaintiff,

v.

LEXI NORTH BAY LLC, a Florida
limited liability company, and GREAT
FLORIDA BANK, a Florida banking
corporation,

    Defendants.
_____/

ADV. PRO. NO. 10-03582-AJC

GREAT FLORIDA BANK, a Florida
banking corporation,

    Cross- Plaintiff,

v.

LEXI NORTH BAY LLC, a Florida
limited liability company,

    Cross-Defendant.
_____/

## AMENDED NOTICE OF APPEAL

Creditor/Defendant/Cross-Defendant, Lexi North Bay LLC ("North Bay") previously on

May 21, 2012 filed a Notice of Appeal [D.E. 120] under 28 U.S.C. § 158(a) and Rules 8001 and

8002, Fed. R. Bank. P., and Local Rule 8001-1 from the judgment, order, or decree of the bankruptcy judge (1) Denying Lexi North Bay, LLC's Motion For Summary Judgment; And (2) Granting In Part And Denying In Part Great Florida Bank's And Lexi Development Company, Inc.'s Cross-Motions For Summary Judgment [D.E. 118] entered on May 7, 2012. North Bay now amends its Notice of Appeal to include (a) an appeal of this Court's Final Judgment [D.E. 127] which was entered on June 1, 2012 and (b) an appeal of this Court's Order Denying Lexi North Bay LLC's Motion to Dismiss Great Florida Bank's Cross-Claims [D.E. 42] entered on February 8, 2011.

Dated: June 15, 2012

Respectfully submitted,

By: /s/ Laura Fortney Gross
**Laura Fortney Gross**
Florida Bar No. 0020531
**Raymond V. Miller**
Florida Bar No. 328901
**Michael B. Green**
Florida Bar No. 87571
Gunster, Yoakley & Stewart, P.A.
One Biscayne Tower
2 South Biscayne Blvd., Suite 3400
Miami, FL 33131-1897
Telephone: (305) 376-6000
Facsimile: (305) 376-6010
*Attorneys for Lexi North Bay, LLC*

## **CERTIFICATES:**

**PURSUANT TO LOCAL RULE 9011-4(B)**:

I hereby certify that I am admitted to the Bar of the U.S. District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in the Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2012, a true and correct copy of the foregoing was served via CM/ECF electronic transmission upon those parties who are registered with the Court to receive electronic notifications in this matter.

By: /s/ Laura Fortney Gross
Laura Fortney Gross, Esq.

MIA_ACTIVE 4025439.2



**ORDERED in the Southern District of Florida on May 4, 2012.**

A. Jay Cristol, Judge
United States Bankruptcy Court
_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE

LEXI DEVELOPMENT COMPANY, INC.,    CASE NO. 10-27573-BKC-AJC

   Debtor.    CHAPTER 11
_____/

LEXI DEVELOPMENT COMPANY, INC.,    ADV. NO. 10-03582-BKC-AJC-A

   Plaintiff,

vs.

LEXI NORTH BAY, LLC, et al.,

   Defendants.
_____/

**ORDER (1) DENYING LEXI NORTH BAY, LLC'S MOTION FOR SUMMARY JUDGMENT; AND (2) GRANTING IN PART AND DENYING IN PART GREAT FLORIDA BANK'S AND LEXI DEVELOPMENT COMPANY, INC.'S <u>CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

1

On April 10, 2012 the Court conducted a hearing on the Motion for Summary Judgment filed by Defendant Lexi North Bay, LLC ("North Bay") and the Responses and Cross-Motions for Summary Judgment filed by Defendant/Cross-Claimant Great Florida Bank ("GFB") and the Debtor/Plaintiff Lexi Development Company, Inc. ("Lexi" or "Debtor").

The Court has considered: (1) *Lexi North Bay, LLC's Motion for Summary Judgment* (ECF#86), and all exhibits thereto; (2) *Debtor Lexi Development Company, Inc.'s Cross-Motion for Summary Judgment and Opposition to Lexi North Bay's Motion for Summary Judgment* (ECF#97), and all exhibits thereto; (3) *Great Florida Bank's Response in Opposition to Lexi North Bay, LLC's Motion for Summary Judgment and Cross-Motion for Summary Judgment* (ECF#113), and all exhibits thereto; (4) *Lexi North Bay, LLC's Combined Reply to Debtors' and Great Florida Bank's Response to its Motion for Summary Judgment [D.E. 86] and Combined Response in Opposition to Debtor's [D.E. 98] and Great Florida Bank's Cross Motions for Summary Judgment [D.E. 113]* (ECF#114), and all exhibits thereto; (5) *Lexi Development Company, Inc.'s Reply in Support of its Cross-Motion for Summary Judgment* (ECF#115); (6) *Great Florida Bank's Reply in Support of Cross-Motion for Summary Judgment* (ECF#116); and (7) *Great Florida Bank's Notice of Filing in Support of Cross-Motion for Summary Judgment* (ECF#117). In addition, the Court has considered the record in this case, the arguments of counsel, and relevant pleadings and authorities.

Being duly advised, the Court finds that there is no genuine issue as to any material facts necessary to resolve the issues presented. Accordingly, for the reasons set forth herein, the Court, pursuant to Fed.R.Civ.P. 56, as incorporated by Fed.R.Bankr.P. 7056: (1) denies North Bay's motion for summary judgment; and (2) grants in part GFB's and Lexi's Cross-Motions for

summary judgment, and determines that North Bay is precluded from asserting a claim for default-rate interest under the loan it acquired from Regions Bank.

## UNDISPUTED FACTS

The following facts are not subject to any genuine dispute:

1. On December 5, 2005, a group of banks including Regions Bank ("Regions") made a loan of approximately $56 million to Lexi (the "Regions Loan"), secured by a mortgage on Lexi's property, a condominium project in North Bay Village, Florida (the "Property"). (ECF#1-1 pp. 1-9, ECF#1-2 pp. 1-29).

2. On December 5, 2005, Allen and Jill Greenwald (the "Greenwald Lenders") provided Lexi with an additional $6 million in mezzanine financing, secured by a pledge of the equity interests in Lexi (the "Mezzanine Loan"). (ECF#1-2, pp. 30-36). GFB was the source of the $6 million and the Mezzanine Loan was collaterally assigned to GFB by the Mezzanine Lenders. (ECF#113, Ex. A ¶ 4).

3. Contemporaneously with the Regions Loan and the Mezzanine Loan, on December 5, 2005 Regions and the Greenwald Lenders entered into an Intercreditor Agreement. (ECF#1-2, pp. 37-49). The Intercreditor Agreement provides in relevant part:

> Senior Loan Agent [Regions] will provide to Junior Secured Party [the Greenwald Lenders] a copy of any written notice of default under the Loan documents provided by Senior Loan Agent to Borrower concurrently with the providing of such written notice to Borrower and, in any event, prior to accelerating the Loan and prior to Junior Secured Party (but not Borrower) being obligated to pay default rate interest to Senior Loan Agent in order to cure the applicable default. Junior Secured Party shall have the right (but not the obligation) to cure any monetary default under the Senior Debt within ten (10) business days after Junior Secured Party receives written notice of such default.
>
> In the event Junior Secured Party receives notice (a) from Senior Loan Agent of a default pursuant to the foregoing subparagraph, or (b) of a Bankruptcy Proceeding with respect to Borrower, then Junior Secured Party shall have the option to purchase the Senior Security Documents for a purchase price equal to the

3

outstanding amount of the Loan and all sums secured by the Senior Security Documents which would be due and payable if the Senior Debt was paid at the date of such acquisition.

Id., pp. 42-43 ¶ 12. The Intercreditor Agreement gave the Greenwald Lenders: (1) the right to receive notice of any default sent to Lexi; and (2) upon receipt of such notice, the right to cure the default or purchase the loan for its then-outstanding balance at a non-default interest rate, in order to prevent default interest from accruing to the detriment of the Mezzanine Loan position.

    4.    On June 23, 2008, Lexi and Regions entered into a Modification Agreement which extended the maturity date of the Regions Loan. In connection with the Modification Agreement, Regions required Lexi to place an additional $2 million in a reserve collateral account. (ECF#1-2, pp. 50-62).

    5.    GFB agreed to advance $2 million to the Greenwald Lenders to fund the reserve collateral account, which advance was secured by the Collateral Assignment to GFB of the Mezzanine Loan. (ECF#113, Ex. A ¶ 4).

    6.    As a condition of making the $2 million advance, GFB required that Regions execute an addendum to the Intercreditor Agreement which would give GFB the same entitlement to notice of defaults and the same right to cure defaults or purchase the loan. (ECF#113, Ex. A ¶ 5). On June 20, 2008, Regions executed a Letter Agreement which provided in relevant part as follows:

> We acknowledge that the Junior Debt has been collectively assigned by the [sic] yourselves to Great Florida Bank. We consent to this assignment, subject to Great Florida Bank joining in this letter agreement to recognize that the Junior Debt is subject to the Intercreditor Agreement, as modified herein; and to agree with us that it is bound by the Intercreditor Agreement, as modified herein. We agree that in the event we give notice to you of a default under the loan pursuant to paragraph 17 of the Intercreditor Agreement, a copy of such notice shall also be sent to Great Florida Bank at the following address: 15050 N.W. 79th Court, Suite 200, Miami Lakes, Florida 33016.

4

> Great Florida Bank shall have the same rights as you under paragraph 12 of the Intercreditor Agreement to cure defaults under the Loan and to purchase the Loan, provided that in the event both you and Great Florida Bank each exercise the option to purchase the Loan under said paragraph 12, the party first exercising such option right shall be entitled to purchase the Loan under said paragraph 12.

(ECF#1-3, pp. 1-2). The language of the Intercreditor Agreement makes clear the requirement that GFB receive a copy of any written notice of default under the Loan documents *concurrently* with providing such written notice to Lexi. The terms of the Intercreditor Agreement give GFB the opportunity avoid accrual of default interest on the Regions Loan which would clearly erode GFB's junior position. The Intercreditor Agreement expressly provides that copies of default notices had to be provided to GFB prior to accelerating the Regions Loan and prior to GFB being obligated to pay default rate interest to cure the applicable default.

7. After the Letter Agreement was executed, Regions sent multiple notices of default to Lexi:

October 3, 2008: Regions sent a letter to Lexi (with a copy to the Greenwald Lenders, but not to GFB) stating that "Principal payments were required under the Loan so that, by no later than October 5, 2008, the principal balance of the Loan would be reduced to $15,750,000.00 or less. These principal payments have not been made. This letter is to advise you that unless the principal balance of the Loan is reduced to $15,750,000 by October 16, 2008, enforcement action shall be taken under the Loan."

November 3, 2008: Regions sent a letter to Lexi stating that "Under the terms of the Loan Agreement, by no later than October 5, 2008, Borrower was obligated to make principal payments under the Loan sufficient so that the sum of the outstanding principal balance of the Loan, plus any undisbursed Loan funds, was reduced to no greater than $15,750,000. Borrower did not make these payments, resulting in an Event of Default under the Loan (the "Existing Event of Default").

November 13, 2008: Regions sent a letter to Lexi stating that "As you know, the Loan is not current and, in fact, is in default by reason of the principal payment due on October 5, 2008 reducing the outstanding principal balance of the Loan, plus any available undisbursed Loan funds to no greater than $15,750,000, not being made. Previously, the Bank granted to you a forbearance from taking action as a result of this default to allow [the Debtor] additional time to make this payment from the proceeds of a bulk sale. However, the contract for this bulk sale terminated and, therefore, pursuant to your forbearance agreement with the Bank, this forbearance has terminated."

5

December 9, 2008: Regions sent a letter to Lexi stating that "During a review of the remaining inventory for the Lexi Condominium we leaned that Unit 1105 has been conveyed to a third party, but the applicable release price was never tendered to the Bank. The transfer of this Unit, without the applicable release payment being received by the bank, constitutes an additional default under the Loan. Bank and Co-Lenders reserve all rights and remedies available to them as a result of this default."

(ECF#97, Ex. A, Ex. A-D thereto).

8. However, it is undisputed that Regions did not provide copies of any of the foregoing notices of default to GFB, as required by the Intercreditor Agreement, as amended by the Letter Agreement. (ECF#113, Ex. A ¶ 9).

9. In December 2008, Regions Bank entered into negotiations with RAM Realty Investors, LLC (the parent of North Bay) regarding sale of the Regions Loan (ECF#113, Ex. B pp. 16-17). North Bay was aware of the Intercreditor Agreement, and of the requirement that GFB receive any notices of default; in fact, North Bay's parent's general counsel Karen Geller, in the course of due diligence in connection with the acquisition of the loan, noted to Regions that default notices had been sent by Regions to the Greenwald Lenders but not to GFB, asked Regions for copies of notices sent by Regions to GFB, noted that GFB had an option to cure and purchase the Regions Loan, and requested copies of any release of such rights from GFB. (ECF#97, Ex. C; EX#113, Ex. B pp. 40-42).

10. On January 23, 2009, North Bay purchased the Regions Loan from Regions at a discount as a defaulted loan. In connection with the purchase, North Bay executed a Sale and Assignment Agreement (ECF#86, Ex. 8) and an Assignment (ECF#113, Ex. D) pursuant to which North Bay expressly assumed all of Seller's [Regions'] duties, obligations and responsibilities with respect to the Assets and the Assigned Rights associated therewith." The list of "Assets" attached to the Assignment expressly includes the Intercreditor Agreement and the

6

Letter Agreement. Accordingly, North Bay unequivocally assumed all of Regions' obligations and responsibilities under the Intercreditor Agreement and Letter Agreement.

11. Neither Regions nor North Bay provided GFB with copies of the default notices sent to Lexi. (ECF#113, Ex. A ¶ 9). GFB's representative Marcus Buerosse attests, without contradiction, that had GFB timely received copies of the notices of default from Regions or North Bay, GFB would have been able to take steps to protect its interest in the Property, including curing the defaults and/or purchasing the Regions Loan at the contractual non-default interest rate. (ECF#113, Ex. A ¶ 10).

12. On June 12, 2009, North Bay instituted foreclosure proceedings against Lexi in state court in Miami-Dade County, Florida. (ECF#1-3, pp. 6-21). The foreclosure complaint alleged that as a result of defaults on the Regions Loan, North Bay "elected to and has accelerated all payments due" under the Regions Loan, and demanded judgment for, *inter alia*, $17,287,339.61 in principal, plus "default rate interest from and including December 5, 2008." (ECF#1-3, p. 12, ¶¶ 28, 29).

13. GFB sought to intervene in the foreclosure proceeding, which request was denied. (ECF#86, Ex. 4). GFB then commenced a separate action in Miami-Dade Circuit Court against North Bay and Regions seeking damages and imposition of an equitable lien. (ECF#1-3, pp. 50-56).

14. On June 23, 2010, Lexi filed a voluntary Chapter 11 petition, commencing this bankruptcy case. (Case No. 10-27573-AJC, ECF#1). On September 9, 2010, Lexi commenced this adversary proceeding against North Bay and GFB, seeking a declaration as to the validity, priority and extent of the respective liens of North Bay and GFB in the Property. (ECF#1). GFB, in turn, cross-claimed against North Bay, seeking (1) imposition of an equitable lien; and (2)

7

determination of the validity, priority and extent of North Bay's and GFB's asserted liens. (ECF#15).

15. North Bay asserts the right to collect default interest at a 25% rate on the Regions Loan from at least as early as December 6, 2008. (ECF#113, Ex. C 41:7-23).[1] As a result, North Bay asserts that $13,340,561.68 in default rate interest has accrued on the Regions Loan since December 6, 2008, and that the $14,762,583.15 that has been paid by Lexi on the Regions Loan to North Bay since that date (including application of a $998,241.83 reserve account acquired by North Bay from Regions) has reduced the principal balance of the loan by less than $2 million, from $17,287,339.61 to $15,462,875.32. (ECF#113, Ex. D).

16. If North Bay is permitted to recover default interest, there will be no recovery by GFB or any other party in interest. Lexi's Amended Disclosure Statement represents the reorganization value of the Property to be approximately $13 million, which is less than the amount of remaining principal and default interest claimed by North Bay. (Case No. 10-27573 ECF#162 Ex. B). On the other hand, if North Bay is limited to recovering only its contractual non-default rate interest, then Lexi's Amended Disclosure Statement reflects that there will be sufficient funds to pay all creditors in full from the proceeds of sale of the Property. Id.

17. On January 13, 2012, North Bay filed its Motion for Summary Judgment. (ECF#86), in response to which Lexi and GFB both filed responses and Cross-Motions for Summary Judgment (ECF#97, 113).

## CONCLUSIONS OF LAW

There being no genuine issue as to the material facts bearing on the pending motions, the Court concludes as follows:

---

[1] The contractual non-default interest rate is the one-month LIBOR rate plus 275 basis points. (ECF#1-1, p. 13 Section 2.5(a)).

8

### 1. Regions Breached the Intercreditor Agreement.

The Intercreditor Agreement (as amended by the Letter Agreement) required Regions to give notice to GFB, the junior creditor, concurrently with giving any written notice of default to the borrower, Lexi. Regions breached the Intercreditor Agreement by repeatedly failing to give GFB copies of the default notices sent to Lexi as required the Agreements, which would have permitted GFB to exercise its rights and protect its interests as a junior creditor including the right to cure defaults and/or purchase the Regions Loan at a non-default interest rate. If the Court were to allow North Bay to receive default interest, the Court will have sanctioned the breach of the Intercreditor Agreement which had as its very purpose the protection of GFB's position by requiring that GFB receive the notices of default and have an opportunity to cure.

The Court rejects North Bay's argument that GFB's actual knowledge of the asserted defaults, admittedly acquired several months after the default notices were sent to Lexi, excuses or vitiates Regions' breaches of the Intercreditor Agreement. The Intercreditor Agreement unequivocally required Regions to provide GFB with notice "concurrently" with providing notice to Lexi, so that GFB could exercise its right to cure the default or purchase the Regions Loan and thereby prevent the accrual of default interest and the erosion of its junior position. Regions admittedly did not do so. To suggest that GFB could have exercised its rights based on actual notice months later ignores that the Intercreditor Agreement is clear on its face that GFB was to receive a copy of any written notice of default under the Regions Loan *concurrently* with the providing of such notice to Lexi; timing of the notice was a critical aspect of the Intercreditor Agreement, as the accrual of default interest over the passage of time would cause the very erosion of GFB's junior position that the notice provision was designed to avoid.

The Court also rejects the argument made by North Bay in its pleadings (but not raised at oral argument) that the multiple notices sent to Lexi which expressly refer to the occurrence of events of default were not "notices of default" within the scope of the Intercreditor Agreement. The Intercreditor Agreement does not specifically define or limit what constitutes a notice of default but only broadly refers to "any" written notice of default; in any event, the language in the notices clearly qualifies the correspondence as "notices of default" even under the cases cited by North Bay.

### 2. North Bay Assumed Regions' Obligations Under the Intercreditor Agreement.

The Intercreditor Agreement which bound Regions also binds North Bay. North Bay, as the purchaser of a defaulted loan, cannot claim holder in due course or other status which would insulate it from the obligations of Regions as the "Senior Loan Agent." *See* Fla. Stat. § 673.3021; § 673.3021; Young v. Victory, 150 So. 624, 628 (Fla. 1933) (purchaser who acquired note while obligor was in default on interest payments was not holder in due course and was subject to any defenses available against original lender); Davis v. West, 114 So.2d 703, 05-06 (Fla. 2d DCA 1959) (endorsee who took note after borrower failed to make first interest payment was not holder in due course and was charged with notice of any defenses). Indeed, North Bay expressly assumed all of Regions' duties, obligations and responsibilities under the Intercreditor Agreement when it acquired the Regions Loan.

The Court rejects the argument made by North Bay in its pleadings (but not at oral argument) that the indemnification given by Regions somehow leads to the conclusion that North Bay did not assume the obligations under the Intercreditor Agreement. Unlike RHPC, Inc. v. Gardner, 533 So.2d 312 (Fla. 2d DCA 1998), cited by North Bay, here there is clear and unequivocal evidence – the Sale and Assignment Agreement and the Assignment themselves

10

(ECF#86, Ex. 8; ECF#113, Ex. D), as well as North Bay's general counsel's inquiries regarding the Intercreditor Agreement – that North Bay knowingly and willingly assumed Regions' obligations under the Intercreditor Agreement.

### 3. North Bay is Prohibited from Recovering Default Interest on the Regions Loan.

The Intercreditor Agreement, in Paragraph 12, provides that Regions (and thus its successor in interest, North Bay) was required to provide GFB with a copy of any written notice of default under the Regions Loan concurrently with the providing of such notice to Lexi. Timing of providing a copy of the notice to GFB was a critical aspect of the Intercreditor Agreement because the accrual of default interest would cause the erosion of GFB's junior position that the notice was designed to avoid. Because of Regions' failure to comply with its notice obligations under the Intercreditor Agreement, GFB was denied the opportunity to cure or purchase the loan at a non-default interest rate and protect against such erosion. As a result, North Bay, as successor to Regions, is prohibited from accruing default interest on the Regions Loan. Accordingly, for purposes of GFB's and Lexi's claims for determination of the extent, priority and validity of lien, the Court determines that North Bay may not recover default interest under the Regions Loan secured by the Property, and that interest accruing on the outstanding balance of the Regions Loan shall be calculated solely at the contractual non-default interest rate.

### 4. The Equitable Lien Claim is Moot.

The primary and overriding dispute among the parties in this bankruptcy adversary proceeding is the issue of default interest. Imposition of default interest by North Bay on the Regions Loan would vitiate GFB's junior position and consume all the remaining equity in the Property. The Intercreditor Agreement's notice provision was designed to avoid this very problem. However, if North Bay is limited to recovering note rate (non-default) interest on the

11

Regions Loan, then according to Lexi's projections, the Property will have sufficient value to fully satisfy the Regions Loan and pay GFB, thereby preventing the breach of the Intercreditor Agreement from eroding GFB's position. The Court believes that GFB's claim for an equitable lien is moot, as resolution of the default interest issue (discussed *infra*) provides GFB with an adequate remedy for purposes of this bankruptcy adversary proceeding.

Based on the foregoing undisputed facts and the conclusions of law, it is

**ORDERED** as follows:

1. Summary judgment is granted in favor of GFB and Lexi, and against North Bay, on GFB's and Lexi's claims for determination of extent, priority and validity of lien with respect to the Regions Loan secured by the Property. No default rate interest shall accrue on the Regions Loan in determining the sums owed to North Bay on the Regions Loan.

2. In light of the foregoing resolution of the claims for determination of extent, priority and validity of lien, GFB's claim for equitable lien in this adversary proceeding is dismissed as moot.

3. North Bay's Motion for Summary Judgment is denied.

###

**ORDER SUBMITTED BY:**
David L. Rosendorf, Esq.
Counsel for Great Florida Bank
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134
Tel:   (305) 372-1800
Fax:   (305) 372-3508
Email: drosendorf@kttlaw.com

**COPIES FURNISHED TO:**
David L. Rosendorf, Esq.
[Attorney Rosendorf is directed to serve copies of this order on all interested parties and to file a certificate of service]

12

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
*Miami Division*
www.flsb.uscourts.gov

IN RE:

LEXI DEVELOPMENT COMPANY, INC.,

    Debtor.
_____/

CASE NO.  10-27573-AJC
CHAPTER 11

LEXI DEVELOPMENT COMPANY, INC.
a Florida corporation,

    Plaintiff,

v.

LEXI NORTH BAY LLC, a Florida
limited liability company, and GREAT
FLORIDA BANK, a Florida banking
corporation,

    Defendants.
_____/

ADV. PRO. NO. 10-03582-AJC

GREAT FLORIDA BANK, a Florida
banking corporation,

    Cross- Plaintiff,

v.

LEXI NORTH BAY LLC, a Florida
limited liability company,

    Cross-Defendant.
_____/

## **NOTICE OF APPEAL**

    Creditor/Defendant/Cross-Defendant, Lexi North Bay LLC ("North Bay") appeals under

28 U.S.C. § 158(a) and Rules 8001 and 8002, Fed. R. Bank. P., and Local Rule 8001-1 from the

judgment, order, or decree of the bankruptcy judge (1) Denying Lexi North Bay, LLC's Motion For Summary Judgment; And (2) Granting In Part And Denying In Part Great Florida Bank's And Lexi Development Company, Inc.'s Cross-Motions For Summary Judgment [D.E. 118] on the 7th day of May, 2012.

Dated: May 21, 2012

Respectfully submitted,

By: /s/ Laura Fortney Gross
**Laura Fortney Gross**
Florida Bar No. 0020531
**Raymond V. Miller**
Florida Bar No. 328901
**Michael B. Green**
Florida Bar No. 87571
Gunster, Yoakley & Stewart, P.A.
One Biscayne Tower
2 South Biscayne Blvd., Suite 3400
Miami, FL 33131-1897
Telephone: (305) 376-6000
Facsimile: (305) 376-6010
*Attorneys for Lexi North Bay, LLC*

## CERTIFICATES:

### PURSUANT TO LOCAL RULE 9011-4(B):

I hereby certify that I am admitted to the Bar of the U.S. District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in the Local Rule 2090-1(A).

### CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2012, a true and correct copy of the foregoing was served via CM/ECF electronic transmission upon those parties who are registered with the Court to receive electronic notifications in this matter.

By: /s/ Laura Fortney Gross
Laura Fortney Gross, Esq.



**ORDERED in the Southern District of Florida on June 1, 2012.**

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

LEXI DEVELOPMENT COMPANY, INC.,      Case No. 10-27573-AJC
                                      Chapter 11
    Debtor.
_____/

LEXI DEVELOPMENT COMPANY, INC.,
a Florida corporation,

    Plaintiff,                         Adv. Case No.: 10-03582-AJC

v.

LEXI NORTH BAY, LLC, a Florida limited
liability company, and GREAT FLORIDA
BANK, a Florida banking corporation,

    Defendants.
_____/

## FINAL JUDGMENT

**THIS CAUSE** having come before the Court upon Debtor Lexi Development Company,

Inc. and Great Florida Bank's Joint Motion for Entry of Final Judgment [ECF No. 125] (the

"*Motion*"), following the entry of the Court's Order (1) Denying Lexi North Bay, LLC's Motion for Summary Judgment; and (2) Granting in Part and Denying in Part Great Florida Bank's and Lexi Development Company, Inc.'s Cross-Motions for Summary Judgment [ECF No. 118] (the "*Order*"). The Court, having reviewed the Motion, the Order, and the Court file, and being otherwise duly advised, it is

**ORDERED AND ADJUDGED:**

1. Final judgment is entered on Count I of the Debtor Lexi Development Company, Inc.'s (the "*Debtor*") Complaint to Determine the Validity, Priority, and Extent of Liens [ECF No. 1] and Counts I and II of Great Florida Bank's Cross-Claim Against Lexi North Bay, LLC [ECF No. 15] (the "*Cross-Claim*").

2. As set forth in the Order, Regions Bank breached the Intercreditor Agreement between it and Great Florida Bank, among others, (the "*Intercreditor Agreement*") by failing to give notice and cure/purchase rights to Great Florida Bank. Lexi North Bay, LLC ("*North Bay*") is the successor in interest to Regions Bank relative to the Intercreditor Agreement. Accordingly, for the purposes of calculating the amounts owed to North Bay under that certain loan evidenced by, among other things, (1) the Construction Loan Agreement dated December 5, 2005, by and among Regions Bank, as Administrative Agent and Collateral Agent, and the Debtor; (2) the Promissory Note dated December 5, 2005 in the amount of $25,000,000 made by the Debtor in favor of Regions Bank; (3) the Promissory Note dated December 5, 2005 in the amount of $10,937,500 made by the Debtor in favor of Regions Bank; (4) the Promissory Note dated December 5, 2005 in the amount of $10,000,000 made by the Debtor in favor of Regions Bank; (5) the Promissory Note dated December 5, 2005 in the amount of $10,937,500 made by the Debtor in favor of Regions Bank; (6) the Florida Real Estate Mortgage, Assignment of Leases and Rents and Security Agreement dated December 5, 2005, by and between the Debtor and

Regions Bank, as recorded December 9, 2005 in Official Records Book 24032, Pages 3755 – 3775, of the Public Records of Miami-Dade County, Florida; and (7) the Modification Agreement by and among the Debtor and Regions Bank, among others, dated June 23, 2008 (the "**Loan**"), which Loan was assigned to North Bay by virtue of that certain Assignment by Regions Bank in favor of North Bay dated January 26, 2009, recorded March 3, 2009 in Official Records Book 26772, Pages 3041 – 3043, of the Public Records of Miami-Dade County, Florida, North Bay is not now entitled to any default-rate interest under the Loan. This shall not apply to any future defaults by the Debtor under the Loan, as may be modified by the confirmed plan of reorganization in *In re: Lexi Development Company, Inc.,* Bankr. S.D. Fla. Case No. 10-27573-AJC or otherwise.

    3.    Great Florida Bank's claim for an equitable lien is dismissed as moot.

###

**Submitted By:**
Peter D. Russin, Esquire
Fla. Bar No: 765902
prussin@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
*Counsel for Lexi Development Company, Inc.*
200 South Biscayne Boulevard, Ste. 3000
Miami, Florida  33131
Telephone:     (305) 358-6363
Telefax:          (305) 358-1221

**Copies Furnished To:**
Peter D. Russin, Esquire, is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.